# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6815 | **DATE** | 7/30/2001 |
| **CASE TITLE** | Eastern Trading Co. vs. Refco, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation to the Honorable Suzanne B. Conlon recommending that Refco's Post-Remand Motion for Attorneys' Fees and Related Nontaxable Expenses [Dkt #351] and Refco's Petition For Indemnification of Attorneys' Fees and Related Nontaxable Expenses [Dkt #362] be GRANTED in the amount of $5,093,706.97. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this case having been resolved, the referral is closed and the case is returned to the assigned judge.

*Geraldine Soat Brown*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 0 1 2001 | | 368 |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | DMJ | | |
| ✓ | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | | SG-7 FILED FOR DOCKETING 01 JUL 30 AM 10: 02 | date mailed notice | | |
| gr | courtroom deputy's initials | | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EASTERN TRADING COMPANY through ) <br> MOHAMMAD ASHRAF MOHAMMAD ) <br> AMIN, MOHAMMAD RASHID ASHRAF, ) <br> both as partners of EASTERN TRADING ) <br> COMPANY and individually, and ZAHID ) <br> HUSSAIN ASHRAF, ) <br> Plaintiffs/Counterdefendants. ) <br> ) <br> v. ) <br> ) <br> REFCO, INC. and REFCO CAPITAL ) <br> CORPORATION, ) <br> Defendants/Counterplaintiffs. ) <br> ) | Cause No. 97 C 6815 <br><br> Judge Suzanne B. Conlon <br> Magistrate Judge Geraldine Soat Brown |

To:    The Honorable Suzanne B. Conlon
       United States District Court Judge

DOCKETED

AUG 0 1 2001

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

This case has been referred by the District Judge for a Report and Recommendation regarding Refco, Inc.'s Post-Remand Motion for Attorneys' Fees and Related Nontaxable Expenses [Dkt #351]. For the reasons set out herein, this Court respectfully recommends that the District Judge GRANT that motion and Refco's subsequent Petition relating to that motion [Dkt #361] in the amount of $5,093,706.97.

## PROCEDURAL BACKGROUND

The history and background facts of this litigation between plaintiffs-counterdefendants Eastern Trading Company, *et al.*, (collectively referred to herein as "Eastern") and defendant-

1

counterplaintiff Refco, Inc. ("Refco") were set out in the opinion of the Court of Appeals in *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617 (7th Cir. 2000), which affirmed a jury verdict in favor of Refco and against Eastern, reversed the District Court's decision to deny Refco's claim for attorneys' fees and remanded the case to the District Court with directions to award Refco its attorneys' fees in accordance with the customer agreement between Refco and Eastern (described *below*). Subsequently, Refco filed its Post-Remand Motion for Attorneys' Fees and Related Nontaxable Expenses [Dkt #351] and a Supplement to that motion. [Dkt #348.] Eastern filed a Response to Refco's motion [Dkt #349], and the District Court referred the motion to this Court for a report and recommendation. [Dkt #353.] Upon receiving the referral, this Court held a status hearing, ordered Eastern to prepare a spreadsheet of its objections to the requested fees and ordered the parties to meet and confer and to prepare a joint statement pursuant to Local Rule 54.3. Refco filed its Petition for Indemnification of Attorneys' Fees and Related Litigation Expenses [Dkt #361], which was essentially a refinement of its earlier Motion. The parties' Joint Statement (Ex. 4 to Refco's Petition) did not substantially narrow the disputes. Eastern filed a Memorandum in Opposition [Dkt #362], which was supplemented by a Summary and revised Appendix A. [Dkt #366]. Both parties filed reply memoranda [Dkt #363 and 364.] The Court heard oral argument on May 17, 2001.

## ANALYSIS

The Customer Agreement and Eastern's Obligation Thereunder.

The Court of Appeals decided that because Refco prevailed on its claim Refco is entitled to reasonable attorneys' fees pursuant to the Customer Agreement between Refco and Eastern, which is attached as Exhibit 1 to Refco's Petition. 229 F.3d at 617. Refco seeks an award of $5,272,826.97 for fees for time and expenses. A central legal dispute between the parties is which

2

of two clauses in the Customer Agreement governs the Refco's claim.

Refco argues for the application of Section 21 , which states:

**Indemnification.** The Partnership [Eastern], and each of the general partners thereof, jointly and severally agree to indemnify Refco and hold Refco harmless from and against any and all liabilities, losses, damages, costs and expenses, including attorneys' fees, incurred by Refco because any of the Partnership's representations and warranties shall not be true and correct or the agreements made herein by the Partnership shall not be fully and timely performed. The Partnership and each of the general partners thereof, jointly and severally, also agree to pay promptly to Refco all damages, costs and expenses, including attorneys' fees, incurred by Refco in the enforcement of any of the provisions of this agreement.

Eastern argues for the application of Section 5, which provides:

**Liquidation of Accounts**. In the event of (a) the termination, dissolution or liquidation of the Partnership, (b) the filing of a petition in bankruptcy, or a petition for the appointment of a receiver, by or against the Partnership or any general partner of the Partnership, (c) the filing of an attachment against any of the Partnership's accounts carried by Refco, (d) insufficient margin, or Refco's determination that any collateral deposited to protect one or more accounts of the Partnership is inadequate, regardless of current market quotations, to secure the account, or (e) any other circumstances or developments that Refco deems to require action necessary for its protection, Refco is hereby authorized, according to its judgment and in its sole discretion, to take one or more or any portion of the following actions: (1) satisfy any obligation the Partnership may have to Refco, either directly or by way of guaranty or suretyship, out of any of the Partnership's funds or property (or the funds and property of any general partner) in the custody or control of Refco; (2) sell any or all futures contracts, commodities or securities held or carried as a short position for the Partnership; and (3) cancel any or all outstanding orders, contracts, or any other commitments made on behalf of the Partnership. Any of the above actions may be taken without demand for margin or additional margin, without prior notice of sale or purchase or other notice or advertisement to the Partnership, its successors, or assigns, and regardless of whether the ownership interests shall be solely the Partnership's or held jointly with others. In liquidating the Partnership's long or short positions Refco in its sole discretion may sell or purchase in the same contract month or initiate new long or short positions in order to establish a spread or straddle which in Refco's judgment may be necessary or advisable to protect existing positions in the Partnership's account. Any sales or purchases hereunder may be made according to Refco's judgment and at its sole discretion on any exchange or other market where such business is then usually transacted or at public auction or at private sale, and Refco may purchase the whole or any part thereof free from any right of redemption. It is understood that, in all cases, a prior demand, call, or notice of the time and place of a sale or purchase shall not be considered a waiver of

Refco's right to sell or buy without demand or notice as herein provided. The Partnership at all times shall be liable for the payment of any debit balance upon demand by Refco, and shall be liable for any deficiency remaining in the Partnership's account(s) in the event of the liquidation thereof in whole or in part by Refco or by the Partnership. In the event the proceeds realized pursuant to this authorization are insufficient for the payment of all the liabilities of the Partnership due to Refco, the Partnership shall promptly pay, upon demand, the deficit and all unpaid liabilities, together with interest thereon and all costs of collection including reasonable attorneys' fees. In the event Refco incurs expenses, including legal fees with respect to any account of the Partnership, the Partnership agrees to be liable therefor.

Eastern focuses on the second to the last sentence of Section 5, and argues that "Refco's form contract expressly limits the scope of recoverable attorneys' fees and expenses to those incurred by Refco as its 'costs of collection' of any deficit balance in Eastern's account." (Eastern's Mem. in Opp'n at 8.) Eastern argues that Section 21 cannot be applicable because, Eastern states, Refco never alleged that any of Eastern's representations and warranties was false, and Eastern's only claim was to recover a debit in Eastern's account. Thus, Eastern argues, Section 5 should be applied and Refco should be limited to the "cost of collection," under the principle of contract construction that when a specific and a general clause address the same subject, the more specific should be applied. (*Id.* at 8, n.1; Eastern's Reply Mem. in Opp'n at 3.)[1]

"In interpreting all contracts, including indemnity agreements, the paramount concern and overriding purpose is to give effect to the intent of the parties." *Church v. General Motors Corp.,* 74 F.3d 795, 799 (7th Cir. 1996), citing authority. When possible, courts should construe a contract so that different provisions are harmonized and not conflicting with one another. *Henderson v.*

---

[1] Although the Seventh Circuit's opinion in this case expressly refers to the obligation of Eastern to reimburse Refco for the cost (including reasonable attorneys' fees) of collecting any unpaid debit in the account (229 F.3d at 626), counsel for both parties acknowledged at oral argument on May 17, 2001 that this did not reflect a decision by the Seventh Circuit that a particular section of the Customer Agreement applied to Refco's claim, an issue that the Court of Appeals was not asked to decide.

4

*Roadway Express,* 720 N.E. 2d 1108, 1111 (Ill. App. 1999). The principle of contract construction that a specific clause prevails over a general clause is invoked only when the two address the same subject and there is ambiguity or conflict between the provisions. *Countryman v. Industrial Comm.,* 686 N.E.2d 61, 64-65 (Ill. App. 1997).

> Also, contract provisions and terms are to be interpreted as a whole and not in isolation. Effect is to be given to every provision because it is presumed that every clause was inserted for a purpose.

*Id.* at 65.

In this case, Section 21 contains two promises by Eastern (the partnership and its general partners): First, to indemnify Refco from "liabilities, losses, damages, costs and expenses including attorneys' fees" incurred by Refco because (a) Eastern's representations and warranties were not correct; or (b) the Partnership does not perform the Customer agreement; and second, to pay Refco "all damages, costs and expenses, including attorneys' fees" that Refco incurs in enforcing the Customer Agreement. Section 5 authorizes Refco to take self-help action in the event that Refco becomes insecure about Eastern's ability to perform under the Customer Agreement. Section 5 further provides, that, notwithstanding Refco's ability to use self-help, Eastern continues to remain liable for any deficiency. Finally, Section 5 provides that in the event that the proceeds generated by Refco's self-help are inadequate, the Partnership shall pay "on demand" (a) the deficit, (b) "all unpaid liabilities;" together with (c) interest; and (d) "all costs of collection including reasonable attorneys' fees." Section 5 further provides, "In the event Refco incurs expenses, including legal fees with respect to any account of the Partnership, the Partnership shall be liable therefor."

There is no conflict between Section 21 and Section 5, and no ambiguity in the Customer Agreement about Refco's recovery here. The Customer Agreement requires Eastern (both the partnership and its general partners) to pay Refco's "expenses, including attorneys' fees" in

enforcing the Agreement. The sentence of Section 5 that Eastern cites simply provides that Eastern's obligation is not limited to the proceeds that Refco would obtain by self-help. In focusing on the second to the last sentence of Section 5 to limit its obligation, Eastern ignores the last sentence of that section.

*Jackson v. Oppenheim*, 533 F.2d 826 (2d Cir. 1976), and *Kaiser v. Olson,* 435 N.E.2d 113 (Ill. App. 3d 1982), relied upon by Eastern (Eastern's Mem. in Opp'n at 9-10), do not support limiting Refco's recovery here. In *Jackson* and *Kaiser*, the obligation to pay attorneys' fees arose out of a promissory note that provided that the promisor was to pay all "costs of collection" incurred by the promisee in collecting the note. *Jackson*, 533 F2d at 830; *Kaiser*, 435 N.E.2d at 115. In both of those cases the court determined that the obligation of the promisor did not extend to fees and expenses incurred by the promisee in defending against an action brought by the promisor to negate the underlying transaction. The court in *Kaiser* expressly adopted the rationale of the court in *Jackson*:

> [S]ome language more express than "costs of collection" should have been employed to have placed the party charged on notice that he was undertaking to protect the obligee from costs incurred in defending against a separate claim and not just the ordinary collection expenses in recovering upon a defaulted promissory note.

*Kaiser*, 435 N.E.2d at 120, citing *Jackson*, 533 F2d at 831.

Here, the obligation to reimburse Refco for its expenses including attorneys' fees is included in the Customer Agreement, not merely in a separate promissory note. Furthermore, the express language in Section 21 and in the last sentence of Section 5 provide Eastern with notice that it will be obligated to pay Refco's attorneys' fees incurred "in the enforcement of any of the provisions of this agreement" (Section 21) or "with respect to any account of the Partnership" (Section 5).

The language of the Customer Agreement is closer to that interpreted in another case

6

involving a fee-shifting agreement in a promissory note, *Exchange Nat'l Bank v. Daniels*, 763 F.2d 286 (7th Cir. 1985). In that case, the court required the promisors to pay the bank the entire amount that the bank had paid to its lawyers for the litigation, including time spent in defending the promisor's counterclaims, and two independent suits filed in other states. 763 F.2d at 294. The Seventh Circuit distinguished *Kaiser* because the obligation in *Exchange* was to pay fees for both "collection" and "enforcement" of the note. *Id.* The Seventh Circuit affirmed the district court's conclusion that the defense of the promisors' counterclaims, which alleged that they had been fraudulently induced to enter into the note and guaranty, was integral to the enforcement of the note, and that the other litigation commenced by the promisors was designed to frustrate the enforcement of the note. *Id.*

Construing the terms of the Customer Agreement in light of these precedents, Eastern's position that Refco is limited to "cost of collection" on the debit in Eastern's account is rejected.

Eastern also cites *Harter v. Iowa Grain Co.*, 220 F.3d 554 (7th Cir. 2000), in support of the proposition that fee-shifting clauses drafted by the party seeking to recover thereunder should be narrowly construed. In *Harter*, the Seventh Circuit construed an attorneys' fees clause in a contract between a farmer and a grain elevator operator. The contract, which also had an arbitration clause, provided that "Seller [Harter] shall also be liable for The Andersons' attorney fee, cost of collection, plus interest." The Court interpreted that provision to limit The Andersons to fees necessary to collect its damages under the contract, and not to include "discretionary litigation efforts unnecessary to the collection." 220 F.3d at 560. The arbitration panel had awarded The Andersons' $85,000 in attorneys' fees, and that award was affirmed by the Seventh Circuit. (*Id.* at 557.) In addition, the Seventh Circuit affirmed the district court decision to award The Andersons their attorneys' fees for opposing Harter's action to vacate the arbitration award. (*Id.* at 557-58.) Furthermore, the

Seventh Circuit held that it was not an abuse of discretion for the district court to conclude that the following activities were necessary for The Andersons' collection efforts and therefore within the scope of the attorneys' fees obligation: The Andersons' opposition to the interlocutory appeal taken by Harter from the order compelling arbitration; (*Id.* at 560); The Andersons' request for an injunction to compel Harter to escrow profits he received on the sale of assets (*Id.*); and The Andersons' fees incurred in defending on appeal the district court's dismissal of a subsidiary of The Andersons. (*Id.* at 561). The Seventh Circuit held that the attorneys' fees obligation did not require Harter to pay The Andersons' fees for joining with a co-defendant in an unsuccessful motion to sanction Harter's counsel (*Id.* at 560) and The Andersons' duplication of effort by the arbitration forum (NFGA) to quash a subpoena Harter served upon it. (*Id.* at 560.) Those actions, the Seventh Circuit held, were not *necessary* for The Andersons' collection effort. (*Id.* at 560-61, emphasis in original.)

Two other opinions by the Seventh Circuit give further guidance in analyzing Refco's claim: *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp*, 73 F3d 150 (7th Cir. 1996), and *Medcom Holding Co., v Baxter Travenol Laboratories, Inc.*, 200 F.3d 518 (7th Cir. 1999). In *Balcor*, the Seventh Circuit interpreted a clause requiring the defendant to indemnify and hold the plaintiff harmless from, *inter alia*, "costs, expenses (including, without limitation, attorneys' fees and expenses)" as requiring the defendant to pay attorneys' fees incurred by the plaintiff as a result of the defendant's default, so that the plaintiff "will be in as good a position as it would have been, had [the defendant] performed as required." 73 F.3d at 153. The Seventh Circuit further noted that the plaintiff sought that it had actually paid, and stated, "Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it." *Id.*

In *Medcom*, the Seventh Circuit instructed the district court on remand to avoid approaching

8

an indemnification clause in a contract as if it were a fee-shifting statute, and instead:

> [A]sk the questions posed by the parties' agreement: did the legal expenses result from Baxter's breach and, if so, were the fees reasonable (that is, were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves)?

200 F.3d at 521.

These precedents require the court to determine whether a particular activity for which fees are sought was reasonably necessary for a purpose for which the agreement provides indemnification, in this case, as a result of Eastern's failing to perform the Customer Agreement (Section 21), to enforce the Customer Agreement (Section 21), as a cost of collection (Section 5), or as an expense with respect to any account of the Partnership (Section 5). It is not necessary that all of the endeavors in that activity be successful (see *Medcom*, 200 F.3d at 521), but they must have resulted from pursuing some purpose for which the Customer Agreement provides indemnification. Finally, the fees and expenses incurred in that activity must be reasonable relative to the stakes of the case and the opponent's litigation strategy. *Medcom*, 200 F.3d at 521. That the party seeking reimbursement paid the fees and expenses at a time when its recovery was uncertain is a strong indication of commercial reasonableness, as is proof that the indemnifying party's fees equal or exceeded those of the party seeking recovery. *Id.*

The precedents discussed *above* also demonstrate that another of Eastern's arguments must be rejected, *i.e.*, that because its fraud claim was not dismissed on Refco's motion for summary judgment, the District Judge found those claims to be "meritorious" and therefore, allowing Refco to recover its fees and expenses for defending Eastern's fraud claims would "upset the policies underlying the American rule by discouraging those in Eastern's position from asserting their non-frivolous claims." (Eastern's Mem. in Opp'n at 10-11.) Eastern argues that it should not be

"penalized for pursuing its non-frivolous fraud based claims." (*Id.* at 11. *See also* Eastern's Reply Mem. in Opp'n at 2.)

Eastern's argument is incorrect both factually and legally. First, while the District Judge denied Refco's motion for summary judgment and later stated (in the context of denying Eastern's motion for a new trial or judgment as a matter of law not withstanding the verdict) that there was sufficient evidence to support a jury verdict on each side (Minute Order of May 3, 1999 [Dkt #304]), the District Judge did not find Eastern's claims "meritorious," as Eastern claims. (Eastern's Reply Mem. in Opp'n at 2.)[2] The District Judge did not grant summary judgment for Eastern, nor did she grant Eastern's motion for judgment notwithstanding the verdict. Eastern's claims were not found to be frivolous, but Refco is not seeking its fees as a sanction under Federal Rule of Civil Procedure 11 to punish Eastern. The issue here is one of contract rights. As a legal matter, the "American rule" is subject to an exception when the parties have entered into an agreement with respect to fees and that rule is not disturbed by the full enforcement of such an agreement, which merely gets the parties the result of their bargain. *See Balcor*, 73 F.3d at 152-53.

Thus, we turn to the individual elements of Refco's claim and Eastern's objections.

## REFCO'S CLAIM

Refco seeks a total of $5,272,826.97 for fees and expenses through February, 2001, and also seeks leave to submit a supplemental petition for fees incurred thereafter. (Refco's Pet. for Indemnification of Attorneys' Fees and Related Litigation Expenses ("Refco's Pet.") at 3.) Refco notes that this amount does not include prejudgment interest, which it states it will seek at a later

---

[2] Black's Law Dictionary (7th ed.) defines "meritorious" as "(Of a case, etc.) meriting a legal victory; having legal worth."

time. (Refco's Pet. Sch. A, n.1.) In support of its petition, Refco submits the affidavit of Joseph P. Collins, one of the attorneys who represented Refco in this action, who states that Refco has paid all of the amounts sought in the petition. (Refco's Pet., Ex. 2, ¶36.) Refco states that it produced eight volumes of invoices and other supporting materials to Eastern previously. (Refco Pet. Sch. B, n.1 and 3; Sch. D, n.1; Sch.E at 2-3.)

Refco breaks its petition into three major subsections:

A. Fees ($4,063,131.47) and expenses ($593,003.28) of Mayer, Brown & Platt ("MBP"), Refco's counsel in this case (totaling $4,656,134.75).

Refco submits a month by month summary of the activities of MBP lawyers and paralegals in connection with the litigation from the period October, 1997 through February, 2001, and the corresponding amounts of fees and expenses billed to Refco by MBP. (Refco Pet. Schs. B and C.)

B. Fees ($388,232.47) and expenses ($28,940) of Rakisons, Refco's counsel in certain litigation in the United Kingdom (totaling $434,521.78).

Refco submits summaries of the activities of the British law firm Rakisons in bringing a legal action in the United Kingdom to obtain an injunction freezing funds in Eastern's London bank accounts. The summaries correspond to invoices rendered by Rakisons on a periodic basis from November, 1997 to June, 1998. (Refco Pet. Sch. D.)

C. Expenses for experts and other professionals ($199,519.98).

Refco submits summaries of services of three expert witnesses, one consulting witness, a jury consultant and a courtroom media presentation firm. (Refco Pet. Sch. E.)

Amounts excluded.

Refco represents that the total sought excludes the following amounts:

$60,989.36 in costs previously awarded by the District Judge in October, 1999 (Refco Pet. Sch. B, n. 4.); and

$31,796.35 in fees and $9,919.80 in expenses relating to the following matters: authentication of the promissory note; Kaheer Khawaja indemnification issues; tortious interference counterclaim and potential lawsuit against Dion Gamble. (Refco Pet. Sch. F.) As noted *below,* some of these relate to topics to which Eastern has objected.

## EASTERN'S OBJECTIONS

Eastern's Memorandum in Opposition quantifies its objections in two ways. First, Eastern describes 32 categories of objections and states for each category the total fees and expenses that it has been able to identify in each category.[3] (Eastern's Mem. in Opp'n, App. A.) Eastern notes that where it objected to an item for more than one reason, it included the item in the sub-totals for each category. (*Id.* at 1, n.1.) The total of all of the objection categories in Appendix A of Eastern's Memorandum is $4,362,009. Second, Eastern lists various time entries by Refco's counsel and various expenses, and states which one or ones of Eastern's 32 objection categories apply to that entry. (Eastern's Mem. in Opp'n, Schs. 2 and 3.) The total of the fees that are identified as objected to in Schedule 2 of Eastern's Memorandum ($3,120,800.26) plus the total of the expenses that are identified as objected to in Schedule 3 of Eastern's Memorandum ($269,874.61) equal $3,390,674.87. Although the discrepancy between the total of Appendix A and the total of Schedules 2 and 3 is not explained in Eastern's Memorandum, presumably it reflects fees paid to Rakisons and other professionals that were included in Eastern's objection category totals but not in the MBP time and expense entries.

Because Eastern included some fees and expenses in more than one objection category, at

---

[3] There are really 26 categories of objections, because some of the category numbers were not used, e.g., category 12.

oral argument this Court requested that Eastern prepare a spreadsheet that would show the individual entries for each objection category as well as fee totals for each category so that in the event that Eastern's objection was sustained as to more than one category, the Court could avoid deducting the same fees twice. In doing that, Eastern revised its objections to select only one ground for each time entry or expense (although that was not required), and submitted a Summary and Revised Appendix A in Opposition. (Eastern's Summ. and Rev. App. A, n. at 2.) Eastern's total of its objection categories was revised to $4,012,531. (Eastern's Summ. and Rev. App. A at 2.)

Before considering each of Eastern's objections, some general observations are in order. First, as the Seventh Circuit stated in *Medcom*, the fees and expenses incurred must be reasonable relative to the stakes of the case and the opponent's litigation strategy. 200 F.3d at 521. The present case was a hard-fought, high-stakes litigation involving plaintiffs who operated on an international basis. As the District Judge stated, "The basic facts were sharply disputed. There was evidence presented by each side that could have supported a jury verdict in that side's favor. . . . This was a vigorously disputed and well-tried case in which the jury evaluated credibility and determined the weight and probative value of conflicting evidence." (Minute Order of May 3, 1999.) In such a situation, this Court is reluctant to second-guess counsels' decisions as to what activities are necessary to enforce the Customer Agreement, which included assembling and presenting evidence to support the credibility of Refco's witnesses and to undermine the credibility of Eastern's witnesses.

Secondly, this Court rejects Eastern's argument (reflected in its objection category 32) that "this is a case primarily concerning [Eastern's] allegations of fraud. . . ." (Eastern's Reply Mem. in Opp'n at 2.), and therefore, Eastern should not be required to pay for Refco's counsels' "time spent preparing for and conducting the trial of this matter." (Eastern's Summ. and Rev. App. A at 10.)

13

Eastern acknowledges that in *Exchange Bank*, the Seventh Circuit affirmed the award of fees that included fees incurred in defending a fraudulent inducement claim because defeating the fraudulent inducement claim was integral to the enforcement of the note. (Eastern's Reply Mem. in Opp'n at 4.) Eastern even acknowledges that "had Eastern claimed it was fraudulently induced to enter into the Customer Agreement with Refco, the *[Exchange Bank v.] Daniels* case might have some application here." (*Id.*) In fact, the record reflects that Eastern affirmatively attempted to avoid the enforcement of the Customer Agreement and the collection of the debit in its account by pleading as an affirmative defense that "any alleged debts owed to the defendants were incurred as a result of the defendants'. . . fraudulent and negligent acts or omissions." (Pls.' Answer and Aff. Defenses to Am. Countercl. and Jury Demand at 8 [Dkt #14].) Thus, Eastern asserted its claim of fraud as a defense to its liability under the Customer Agreement, and defeating Eastern's claim of fraud was integral to Refco's ability to enforce that Agreement.

Eastern's Objections 1 and 2: The U.K. and Swiss proceedings.

Mr. Collins, in his affidavit in support of Refco's Petition states that, because Eastern is a Dubai partnership with few assets in the United States, Refco's counsel made it a priority to locate assets of Eastern to secure any judgment that Refco might obtain. (Collins Aff. ¶21.) Refco learned that Eastern had assets in the United Kingdom and Switzerland as well as Dubai. (*Id.*) Refco retained a Swiss law firm, Werder & Schaub, to analyze the possibility of legal action in Switzerland, but ultimately concluded that a better chance would be to proceed in the United Kingdom. (*Id.*) In the fall of 1997, Refco, represented by the British law firm Rakisons, initiated proceedings in the United Kingdom to freeze assets of Eastern. (*Id.* at ¶22.) Refco obtained an injunction in December, 1997 freezing $16 million of Eastern's funds. Ultimately, the injunction

was dissolved. (*Id.*) Because Eastern was the prevailing party, under the "English rule" Refco had to reimburse Eastern for Eastern's fees in that proceeding, which Refco has done. (*Id.* at ¶¶22-23.) Refco is not asking Eastern to return the approximately $380,000 that Refco paid for Eastern's fees. However, Refco is seeking the fees and expenses that it incurred in connection with the proceedings in the United Kingdom and the time of its Chicago counsel in consulting with Swiss counsel about the possibility of proceeding in Switzerland.

Contrary to Eastern's argument, these fees are clearly necessary to enforce the Customer Agreement. *See, e.g. Harter*, where the Court of Appeals affirmed the district court's award of fees incurred in obtaining an injunction compelling Harter to escrow funds obtained from the sale of assets. *Harter*, 220 F.3d at 582, 562. If there are no assets from which to collect a judgment, the judgment is a hollow victory. Eastern's other arguments against these fees are (a) that Refco's effort was not successful; and (b) that Refco was required to pay Eastern's fees in the United Kingdom proceedings and therefore it would "frustrate English law" to award Refco its fees here. (Eastern's Summ. and Rev. App. A at 3.)

Interestingly, the parties' memoranda differ as to the facts relating to the United Kingdom and Swiss proceedings. For example, Eastern states that Refco filed a proceeding in the Swiss court, which Refco lost because the Swiss court found that there was no evidence that Eastern would secrete its assets, but Eastern provides no factual support for its statement. (Eastern's Summ. and Rev. App. A at 3.) Refco's Petition does not mention any actual court proceedings in Switzerland, and the relatively small amount of the fees that Eastern found associated with the Swiss proceedings ($41,382 in Eastern's calculation) casts doubt on Eastern's version of the events. *See* Eastern's Summ. and Rev. App. A at 3. Likewise, Refco states that its United Kingdom injunction was dissolved because the court determined that it lacked jurisdiction (Collins Aff. ¶22), while Eastern

states that Refco lost because there was no evidence that Eastern had secreted its London assets and "Eastern represented that it had sufficient assets in the United States to satisfy any judgment against it." (Eastern's Mem. in Opp'n at 2.) No documents from the United Kingdom action have been submitted, but under either party's version, the fact that Refco ultimately was not successful does not negate the fact that the activity was necessary for the enforcement of the Customer Agreement. If Eastern's version is correct, to have obtained that representation was actually a significant result for Refco, since it would provide a basis for collecting its judgment in the United States.

Eastern has not cited any authority to support its other argument, that it would frustrate English law to require it to pay Refco's fees. That argument is unavailing for the same reason as its argument about the American rule. Eastern's obligation to pay Refco's fees arises out of the Customer Agreement, which is separate from any general rule. Refco is not asking for an award of the amounts that it paid Eastern, and thus, the English rule is satisfied.

Eastern's objections 1 and 2 are denied.

Eastern's objection 3: The New York attachment proceedings.

Refco states that it successfully attached proceeds of a $13 million judgment in favor of Zahid Ashraf ("Zahid") in an unrelated lawsuit in New York. (Collins Aff. ¶24-25.) After Refco prevailed at trial, those funds were placed in an escrow and were used in lieu of a supercedeas bond to secure the judgment against Eastern in this case pending appeal. (*Id.*) After the decision of the Seventh Circuit affirming the verdict against Eastern, Refco instituted proceedings in New York to collect on the judgment, which concluded with Refco receiving a check for the escrowed funds in April, 2001. (*Id.*)

Eastern argues that the New York proceedings were not directed to Eastern and did not

concern the Customer Agreement. (Eastern's Summ. and Rev. App. A at 4.) Eastern's argument borders on frivolous. In addition to the facts sworn by Mr. Collins, Zahid was a general partner of Eastern. *Eastern*, 229 F.3d at 620. The obligations of the Customer Agreement are expressly imposed upon Eastern and its general partners, jointly and severally. See, e.g., Section 21: "The Partnership and *each of the general partners thereof, jointly and severally,* also agree to pay promptly to Refco all damages, costs and expenses, including attorneys' fees, incurred by Refco in the enforcement of any of the provisions of this agreement." (Emphasis added.)

Eastern's objection 3 is denied.

## Eastern's objection 4: Refco's claim against Zahid Ashraf.

Eastern argues that it should not have to pay Refco's fees incurred in the claim against Zahid individually on the promissory note. The District Judge dismissed that claim at trial and Refco did not appeal the dismissal. (Eastern's Summ. and Rev. App. A at 4). Eastern argues that the legal fees incurred solely for the purpose of enforcing Zahid's *individual* obligation under the promissory note are not appropriately shifted to Eastern under the Customer Agreement. However, Zahid signed the promissory note both in his individual capacity and in his capacity as partner of Eastern, so that the promissory note was also given by Eastern, as the Seventh Circuit stated. *Eastern*, 229 F.3d at 621. The promissory note was the result of the debit in Eastern's account, so that the fees incurred in connection with collecting on that promissory note are "legal fees with respect to any account of the Partnership." (Customer Agreement, Section 5.)

As a general partner of Eastern, Zahid was liable for the partnership's debt. Zahid gave the note not as a result of an unrelated obligation but because of Eastern's failure to fulfill its obligations under the Customer Agreement. Eastern's objection category 4 is denied.

Eastern's objection category 5: Professor Hasan.

Refco states that it hired Professor Khawaja Hasan of Indiana State University as a cultural consultant regarding custom and practices of the Ashrafs' Muslim religion and Pakistani nationality. (Collins Aff ¶27.) Eastern objects to the $6,021 in fees paid to Professor Hasan and $15,252 in fees which Eastern claims that it has identified as time spent by MBP attorneys in consulting with Professor Hasan, as unrelated to collecting the debit in Eastern's account. (Eastern's Summ. and Rev. App. A at 4.) While such a consultant may be unusual, the particular facts of this case support Refco's position that these fees were necessary in the enforcement of the Customer Agreement. First, this was a multi-national, multi-cultural case in which credibility was a critical factor in the jury's decision. It is not unreasonable for counsel to believe that advice about the subtleties of a different culture might assist in evaluating, examining and cross-examining witnesses. Secondly, Refco apparently paid Professor Hasan the fees for which Refco now seeks reimbursement, at a time when its recovery of those fees was far from certain. As discussed in the *Balcor* case, that is a strong indication of reasonableness. In a close and hard-fought case like this one, Eastern, who agreed to indemnify Refco for all expenses incurred in enforcing the Agreement, should not be heard to quibble over relatively small expenses that in the reasonable judgment of counsel are required for proper presentation of the case.

Eastern's objection category 6: Dion Gamble Claim and Tortious Interference Counterclaim.

Dion Gamble is a former employee of Refco who testified for Eastern at trial. According to the District Judge, Gamble was one of Eastern's key witnesses. Mem. Op. and Order, 1999 WL 529569, *2 (July 20, 1999). Refco's counterclaims against Eastern included a claim for tortious interference with Refco's contract with Gamble, on which the jury returned a verdict in favor of

Refco. Apparently Refco also considered a separate lawsuit against Gamble. Eastern objects to any fees incurred because of Refco's tortious interference counterclaim, and states that it has identified fees of $179,120 in this category. (Eastern's Summ. and Rev. App. A at 5.) Refco agrees that fees incurred because of the tortious interference counterclaim are not recoverable from Eastern under the Customer Agreement, but argues that the facts and issues relating to that counterclaim were virtually identical to the issues in the underlying disputes between Eastern and Refco, and, therefore, Refco should be permitted to recover fees and expenses incurred in discovery and work regarding Gamble that is not solely related to its tortious interference counterclaim. (Refco's Mem. in Supp. of its Pet. at 17-18.) Refco also states that it has excluded fees and costs related solely to its tortious interference counterclaim, totaling $8,973.30. (Refco's Pet. Sch. F, Table F-3.)

Although Refco is theoretically correct that fees with respect to Gamble should not be excluded if they related to the enforcement of the Customer Agreement, and Gamble was a key witness in the trial, the amount that Refco excludes–less than $9,000–for the tortious interference counterclaim appears on its face to be significantly understated. For example, Eastern filed a motion for summary judgment on the tortious interference counterclaim, requiring Refco to file a response brief and materials. [Dkt #133 and 134.] The District Judge denied that motion. Mem. Op. and Order, 1998 WL 831834 (Nov. 25, 1998) [Dkt #171.] However, there are no fees listed in Refco's Table F-3 to reflect the research and drafting of Refco's response. Likewise, there are no fees listed in Refco's Table F-3 to reflect the research and preparation of jury instructions relating to the tortious interference counterclaim.

Thus, this Court is left to choose between two amounts: Eastern's total of $179,120 and Refco's total of $8,973. Neither party provided the Court with materials on which to base any other amount. Because this is a category which Refco admits should not be reimbursed by Eastern, Refco

should bear the burden of having failed to separate out the amounts to which it is entitled. Eastern's objection to this category is sustained in the amount of $179,120.00.

Eastern's objection category 7: Fees Relating to Jim McGurk.

Mr. McGurk is an attorney who represented Steven Gilpin, a former Refco employee who executed trades placed at Refco by Zahid. Mr. Gilpin was subpoenaed and deposed by Eastern. (Collins Afft. ¶31.) Time spent by Refco's attorneys talking with Mr. McGurk about his client's testimony was a reasonable activity in this litigation. Eastern's objection 7 is denied.

Eastern's objection category 8: Authentication of Zahid Ashraf's promissory note.

Refco apparently agrees that the fees associated with the authentication of the promissory note are not recoverable, and has excluded them from its claim. (Refco's Pet. Ex. F, Table F-1.) Interestingly, Refco has excluded a greater amount ($7,516.20 in fees and $2,400 in expert fees) than Eastern identified ($5,044). (Eastern's Summ. and Rev. App. A at 5.) Eastern's objection 8 is moot because these amounts have already been excluded from Refco's claim.

Eastern's objection category 9: Fees relating to Zaheer Khawaja.

Eastern objects to any fees relating to Mr. Khawaja, stating merely that his testimony "related primarily to Refco's claims against Zahid Ashraf." (Eastern's Summ. and Rev. App. A at 5.) Refco, on the other hand, argues that Mr. Khawaja, Eastern's broker in Dubai, was a critical witness at the trial, and cites particular portions of Mr. Khawaja's testimony. (Refco's Mem. in Supp. of Pet. at 16-17.) Indeed, Mr. Khawaja's role is discussed in the Seventh Circuit's opinion. *Eastern*, 229 F.3d at 620-21. Refco admits that fees related to considering whether Mr. Khawaja was to be indemnified by Refco are not recoverable against Eastern, and has excluded those fees ($10,973) and Mr.

Khawaja's expenses ($7,519) from its claim. (Refco's Pet. Ex. F, Table F-2.) Eastern's objection 9 borders on frivolous, and is denied.

Eastern's objection category 10: Refco's proprietary accounts.

Eastern states that "[i]n connection with Eastern's claims against Refco, issues arose concerning the propriety of Refco's trading in its own propriety accounts" and argues that Refco should not be permitted to recover fees for defending its own trading. (Eastern's Summ. and Rev. App. A at 6.) Refco points out that it was Eastern who raised those issues, in an effort to avoid the enforcement of the Customer Agreement. (Refco's Mem. in Supp. of Pet. at 20.) Eastern's objection 10 is denied.

Eastern's objection category 11: Attorneys' fees relating to prejudgment interest claim.

Eastern objects to Refco's recovering any amount of fees for the time that it spent seeking prejudgment interest because the District Judge denied Refco's motion to amend the judgment. (Eastern's Summ. and Rev. App. A at 5; Minute Order of June 4, 2000 [Dkt #310].) However, Refco points out that the fees were incurred in enforcement of the Customer Agreement, which provides for interest on amounts due from Eastern to Refco. (Refco's Mo. to Am. Judgment Pursuant to F.R.Civ.P. 59(e) at 5 [Dkt #272].) The District Judge denied Refco's motion not because the Customer Agreement did not provide for interest but because Refco had sought interest in its request to the jury, but the jury did not award interest in its verdict. (Minute Order of June 4, 2000 [Dkt #310].) As noted *above*, because Eastern's obligation to pay Refco's attorneys' fees arises out of its contract obligation to indemnify Refco for expenses incurred in enforcing the Customer Agreement, it is not necessary that Refco have prevailed on a particular aspect of that enforcement effort in order to be reimbursed for its expenses *See Medcom,* 200 F.3d at 521. Eastern's objection

21

11 is denied.

Eastern's objection category 13 [12 was not used]: Attendance of several Refco lawyers at depositions; Eastern's objection category 14: Charges for associates and paralegals observing the trial; Eastern's objection category 16: File organization; Eastern's objection category 30: Trial Graphix; Eastern's objection category 31: Donoghue & Associates.

Eastern's objections in these categories relate to staffing, organization and trial preparation decisions that were made by Refco's counsel, for example, using the jury consultant firm Donoghue & Associates. Eastern simply characterizes these expenses (without citing any factual basis) as "unnecessary and unreasonable" or related to issues other than Refco's claims. (Eastern's Summ. and Rev. App. A at 6-7, 9.) Refco defends these activities as necessary given the complexity of the case. (Refco's Mem. in Supp. of Pet. at 23-24.) The opinion of the Seventh Circuit in *Balcor* applies here, because Refco has paid all of the fees and expenses for which it seeks recovery:

> Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not "evidence" about market value; it *is* market value. Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay. . . . Although Walentas denies that Balcor got its money's worth, it does not deny that these were real bills that Balcor paid and it does not argue that Balcor's lawyers ran the meter because they thought that Walentas would have to cover the tab. . . . Having defaulted on its obligations and forced Balcor to incur these costs, Walentas is in no position to complain that it induced Balcor to incur *large* legal costs. . . .

73 F.3d at 153, emphasis in original.

Also relevant is the fact that Eastern's Chicago counsel, like Refco's counsel, billed millions of dollars in fees and expenses on this case in which a $14 million verdict was entered. Eastern incurred fees and expenses billed by its Chicago counsel through March 2000 totaling $3,963,995, which does not include fees incurred by Zahid's separate counsel or fees of Eastern's counsel in the

proceedings in the United Kingdom and Switzerland. (Refco's Mem. in Supp. of Pet. at 9, n.5.) This Court also considers the opinion of the District Judge in ruling on Refco's request for taxable costs, which, unlike the present petition, is governed by statutory and administrative limits. Mem. Op. and Order, 1999 WL 529569 (July 20, 1999). Eastern objected at that time to Refco's recovering the cost of making duplicate copies of some documents, and the cost of making enlargements of some documents. The District Judge observed:

> Refco responds that this was a complex case involving large numbers of lawyers working in various locations throughout the world. Refco contends it simply was not possible to adequately prepare for trial without an extra copy of important documents. Refco is correct. The complex nature of the litigation, its geographical span, and the large number of lawyers involved on behalf of all parties justifies the expense of making an extra set of copies of documents in preparation for trial. . . . Refco used enlargements of documents and other visual aids in the presentation of its case. Visual aids were helpful in presenting complex chronological and documentary evidence to the jury. Indeed, enlargements and other visual aids were used by *all* parties. Under these circumstances, the costs were reasonable and should be awarded.

1999 WL 529569, *4, emphasis in original.

The District Judge's decision on taxable costs reflected the fact that this was a complex litigation involving a large number of lawyers and elaborate preparation on all sides to present a complicated factual situation to a jury. As noted above, in this close and vigorously fought litigation, the decision of counsel as to staffing and trial preparation should not be subject to second-guessing by Eastern or the Court, particularly where those decision have a presumption of reasonableness because the fees were paid by Refco at a time when its recovery was uncertain. Eastern's objections 13, 14, 16, 30 and 31 are denied.

Eastern's objection category 15: Responding to *Wall Street Journal* inquiries.

Eastern's objection to this category is moot because Refco has excluded fees for this time. (Refco's Pet. Sch. F, Table F-4.)

Eastern's objection categories 17 and 18: Fees to collect fees.

Eastern claims that Refco may not recover its fees for time to litigate the issue of fee indemnification, because it is not a cost of collection. (Eastern's Summ. and Rev. App. A at 7.) As discussed above, Refco's claim is not limited to the cost of collection, rather it includes all fees and expenses incurred in enforcing the Customer Agreement. Refco's claim for attorneys' fees is based on the Customer Agreement, and there is no reason why the fees and expenses that Refco incurs enforcing Eastern's obligation under Sections 5 and 21 of the Customer Agreement should be exempt from recovery. The Court likewise rejects Eastern's argument that Refco has been "completely unreasonable" in proceeding on its fee petition. (*Id.*) That Refco has excluded certain fees and expenses from its petition as a result of Eastern's earlier objections is not evidence of Refco's unreasonableness but rather the result of the process of consultation anticipated by Local Rule 54.3.

Eastern's objection category 22 [19-21 were not used]: Nasir Ashraf's personal claim.

One count of the original complaint was a claim by brought by Nasir Ashraf, one of the partners of Eastern, alleging that Refco violated the Commodity Exchange Act by transferring funds from his personal account to other entities and persons without his approval. (Comp. Count III, ¶¶57-61 [Dkt #1].) Nasir later dismissed this claim voluntarily. Eastern argues that Refco cannot recover its fees and expenses under the Customer Agreement for defending Nasir's individual claim. (Eastern's Summ. and Rev. App. A at 7-8.) However, Eastern specifically alleged as an affirmative

defense to Refco's Counterclaim that "Defendants' claims are barred in whole or in part by the doctrine of <u>in pari delicto</u> in that, <u>inter alia</u> and without limitation, any alleged debts owed to the defendants were incurred as a result of the *defendants' violation of various sections of the Commodity Exchange Act*, breach of their duties to plaintiffs and fraudulent and negligent acts." (Pls.' Ans. and Defenses to Am. Countercl. and Jury Demand at 8 [Dkt #14], emphasis added.) Thus, as Refco argues, defeating Nasir's claim was integral to the enforcement of the Customer Agreement. (Refco's Mem. in Supp. of Pet. at 21.) Eastern's objection 22 is denied.

<u>Eastern's objection category 23: Discovery from other brokerage houses</u>.

Eastern argues that Refco is not entitled to fees relating to discovery regarding Eastern and its individual partners' trading at other brokerage houses. (Eastern's Summ. and Rev. App. A at 8.) However, the District Judge stated in ruling on Refco's motion for taxable costs:

> The propriety of the highly speculative trading done in the Refco accounts was a crucial issue in this case, as was the individual plaintiffs' degree of knowledge and control over the trading. The type of trading done in other Eastern accounts, and the amount of control maintained over the trading was potentially relevant to this case.

Mem. Op. and Order, 1999 WL 523569, *2. Eastern's objection 23 is denied.

<u>Eastern's objection category 25 [category 24 was not used]: Professor Mattar</u>.

Eastern objects to fees for time spent by Refco's counsel speaking to Professor Mattar, apparently an expert on the law of the United Arab Emirates. Eastern argues that since the Customer Agreement is governed by Illinois law, Professor Mattar's opinion could not possibly have related to recovering the debit. (Eastern's Summ. and Rev. App. A at 8-9.) However, Refco submitted an affidavit from Professor Mattar in support of a motion to limine, which was granted to exclude evidence of a conviction entered against Mr. Khawaja in Dubai. (Afft. of Mohammed Mattar, Ex.

6 to Defts.' Mem. in Supp. of their Mo. in Limine to Exclude all Evidence Pertaining to Conviction of Zaheer Khawaja in the U.A.E. [Dkt #142]; Minute Order of Nov. 4, 1998 [Dkt #167].) That ruling, Refco states, was important to protecting the credibility of Mr. Khawaja, one of its most important witnesses. (Refco's Mem. in Supp. of Pet. at 17.)

Eastern states that "Mr. Mattar neither filed an expert report nor did he testify at trial." (Eastern's Summ. and Rev. App. A at 8.) That statement disingenuously ignores Professor Mattar's affidavit, which was filed as a matter of record in this case. Eastern's objection 25 is denied.

Eastern's objection category 26: Depositions of Liz Kaye and Dickram Gazmararian.

Liz Kaye and Dickram Gazmararian were bankers with Republic National Bank in London who handled the Ashrafs' bankers account with that bank. Eastern objects to fees incurred in taking their depositions, because those depositions related exclusively to Refco's defense of Eastern's affirmative claims of fraud. (Eastern's Summ. and Rev. App. A at 8.) Refco points out that videotapes of those depositions were used at trial, and that Eastern's account at Republic Bank was the source and recipient of multi-million dollar transfers from Eastern's account at Refco. (Refco's Mem. in Supp. of Pet. at 18; Collins Afft. ¶26.) Thus, the testimony of the two bankers was relevant both to Refco's claim directly and to the defense of Eastern's claims of fraud, which as discussed *above*, was integral to Refco's enforcement of the Customer Agreement. Eastern's objection 26 is denied.

Eastern's objection category 27: Frederick Uhlmann; Eastern's objection category 28: Douglas Harris; Eastern's objection category 29: Dr. Herzl Spiro.

In the case of each of these experts retained by Refco, Eastern's objection is simply based on the conclusory statement that the witness was retained to opine on "topics unrelated to Refco's

26

counterclaim." (Eastern's Summ. and Rev. App. A at 8-9.) On the contrary, Refco states that Mr. Uhlmann testified at trial about regulations and customs and practices in the futures industry; and that Mr. Harris was retained as an expert on the subject of custom and practices in the financial services industry. (Refco's Pet. at Sch. E.) These topics are clearly relevant to the enforcement of the Customer Agreement, even if Eastern's claims and affirmative defenses are disregarded. Refco states that Dr. Spiro was retained to rebut a line of defense proposed by Eastern at one time–that Zahid suffered from a compulsive gambling disorder–which Eastern subsequently dropped. This defense, if pursued by Eastern, may have been advanced as a defense to Refco's counterclaim.

Refco's retention of these three experts was certainly reasonable. Eastern's objections 27, 28, and 29 are denied.

Eastern's objection category 32: Miscellaneous.

In this category Eastern lumps $1.4 million in fees and expenses incurred in preparing for and conducting the trial of this case. (Eastern's Summ. and Rev. App. A at 10.) As noted *above*, Eastern's argument that the defense of its claims of fraud, breach of fiduciary duty and violation of statutory duty was not part of collecting the debit and enforcing the Customer Agreement simply is not tenable in light of the facts of this case, including the fact that Eastern asserted those very claims as affirmative defenses to Refco's counterclaim. Eastern's objection category 32 is denied.

## CONCLUSION

This Court concludes that all of Eastern's objections should be denied except objection 6 relating to Refco's tortious interference counterclaim, which should be granted in the amount of $179,120.00. The balance of Refco's fees and expenses ($5,272,826.97 less $179,120.00 equals $5,093,706.97) should be granted.

27

For the foregoing reasons, this Court respectfully recommends that Refco's Post-Remand Motion for Attorneys' Fees and Related Nontaxable Expenses [Dkt #351] and Refco's Petition For Indemnification of Attorneys' Fees and Related Nontaxable Expenses [Dkt #362] be GRANTED in the amount of $5,093,706.97.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTER:

*Geraldine Soat Brown*
**Geraldine Soat Brown**
**United States Magistrate Judge**

Dated: July 30, 2001

28